## WATRISS *v.* PIERCE.

Where a plea of fraud to a contract under seal, set forth that the deed was executed and delivered to N., a third person, to be delivered to the plaintiff, in performance of a particular agreement between him and N., and that N. and the plaintiff collusively made a different agreement, less beneficial to the defendants, and the deed was delivered on such new agreement; it was *held*, that a replication that the deed was not obtained by fraud and covin of N. and the plaintiff was bad, because, when a defence consists of several facts, the replication must deny only a single fact, or the facts making a single point of the defence.

A replication, denying that the deed was delivered to N. to be delivered to the plaintiff upon the agreement stated in the plea, is good; because that fact is essential to the defence.

Replications, one of which alleges that the first agreement stated in the plea was set aside and abandoned, the other that it was changed and altered by the plaintiff and N. before the deed was made, and the defendants then knew this, are bad; because it does not necessarily follow that the deed was not delivered to carry into effect that first agreement, and the abandonment or change by N. and the plaintiff was not material.

Replications which traverse no fact alleged in the plea, and which introduce no facts which of themselves constitute an answer to the plea, but which mostly state facts which would in evidence tend to prove a subsequent ratification of the deed, are bad; because they offer no issue by the finding of which the case could be properly determined.

COVENANT. This case had been previously before the court upon demurrers to the plea of the defendants, and the declaration is stated at length in 32 N. H. 560.

One class of pleas, alleging fraud, were sustained, and are

stated substantially at page 560. The demurrers to these pleas were then withdrawn, and several replications filed to each, by leave of the court, agreeably to our statute of 1847, C. S. 483, sec. 4. On one of these, issue is joined. To the others, the plaintiffs demur, and the questions now arise upon these demurrers.

The declaration, in three counts, in substance alleges, that the defendants, by their deed, reciting that the plaintiff had loaned to one Nott, agent of the Portsmouth and Concord Railroad, $20,000, payable in two years, for which the plaintiff had taken Nott's notes, and as collateral security six hundred and seventy-two shares in said railroad, covenanted to take a conveyance of said notes and shares, and pay the debt, if the notes should be unpaid at maturity. It is then averred that the notes were not paid at maturity; that a transfer of the notes and stock was offered to the defendants, and payment of the money demanded, but they refused to perform their covenant.

The pleas to each of these counts were substantially like those pleaded to the others. The replications now in question are pleaded in the same form to the 2d, 10th and 19th pleas. These pleas allege that Watriss, on the 14th of August, 1851, agreed to loan Nott $10,000, and sell him a lot of land for $10,000, upon his notes, averaging two years, secured by a pledge of $60,000 at par of the stock of the railroad, with an agreement of responsible men to take the stock, and pay what might be due, if Nott failed to pay. Nott represented the facts to the defendants, and they executed their deed, and gave it to Nott, to be delivered to Watriss upon the above agreement, and Nott and Watriss fraudulently changed the terms of the agreement, by substituting a smaller sum of money, indorsing the difference as so much interest paid in advance, and by mortgaging back the land to secure payment.

The first replication to each plea avers that the deed of the defendants was not obtained by the fraud and covin of Nott and the plaintiff, as alleged in the plea.

The second alleges that the deed in question was not delivered

to Nott, to be delivered to the plaintiff upon the agreement between Nott and him, stated in the plea, or in execution of it.

The fourth asserts that the agreement alleged by the plea to be made August 14, 1851, was, by mutual consent of Nott and the plaintiff, set aside and abandoned, before the execution of the deed in suit, and the defendants then knew these facts.

. The fifth states that the same agreement, by mutual consent of Nott and the plaintiff, was altered and changed in its terms, before the execution of the deed in suit, and the defendants then knew these facts.

The sixth replication asserts, that after the delivery of the deed in question, the payment of the money, and deed of his land by the plaintiff, and Nott's mortgage, and the indorsements made on the notes—the defendants having full knowledge of all these transactions—procured Nott, for the consideration of $10, to convey to them the land and his right to redeem, &c.

The seventh replication alleges that Nott was agent of the P. & C. Railroad ; was employed to construct it, and to borrow money for its use, on sale or pledge of its stocks or bonds. The railroad, August 15, 1851, delivered to Nott, as their agent, six hundred and seventy-two shares, to enable him to procure of the plaintiff the money and land, in the second plea mentioned, for their use, by pledging the same as collateral security for the repayment of the money and payment for the land. The defendants were stockholders and officers of the railroad, and knew, when they executed the deed, all these facts, and executed and delivered said deed to Nott, as agent, to enable him to procure said money and land for the use of the railroad. And Nott, as agent, &c., did purchase said land, and borrow said $8,317 of the plaintiff, for their use, and not his own, and mortgaged the land, and pledged said six hundred and seventy-two shares to the plaintiff, to secure payment of said notes, and delivered to the plaintiff the defendants' deed ; and immediately after, communicated to said corporation, and to the defendants, the terms and conditions, &c. ; and, with the knowledge of said corporation and defendants, expended the money for the use of the

corporation, and not his own. And the defendants, though they knew all these facts, did not repudiate or disclaim the acts of Nott, in behalf of said company, or the terms or conditions on which he purchased the land, or borrowed the money, nor object to Nott retaining the money, and expending it for the use of the railroad, nor to the delivery of their deed by Nott to the plaintiff; but on, &c., requested the company, in consideration that they had executed and delivered said deed to the plaintiff, to indemnify them from loss on said deed, and the company agreed to indemnify them from loss on that account, and on, &c., the defendants requested Nott to convey to them the land, and his right to redeem it, to secure them from loss on account of said deed ; and Nott, for those purposes, and for $10, conveyed to them his right to the land, whereby said Nott and said corporation ceased to have any interest to redeem, and were disabled to raise money by a sale of this land, &c.

The eighth replication states that on the 31st of December, 1850, Nott agreed with the railroad to take the entire charge, as agent and engineer, of the construction and running of the railroad, to be completed, &c., for three years from January 1, 1851, and to attend to the financial affairs of the corporation, and to borrow for the corporation not less than $38,050 on two thousand shares of stock, to be pledged as collateral security, to be applied to finish the road, the corporation agreeing to aid him in effecting such loan, and to place at his disposal said two thousand shares. And the corporation, August 12, 1851, delivered to Nott, in pursuance, &c., six hundred and seventy-two shares, to enable him to borrow said $8,317, and to purchase said land in the second plea mentioned, for the use of the corporation, by pledging, &c. The said defendants were stockholders, &c.

The residue of this replication was similar to the seventh.

Special causes of demurrer are assigned to each of these replications, which are alluded to in the opinion of the court, where they seemed material.

*W. H. Y. Hackett, J. Parker*, and *C. Smith*, for the plaintiff.

*Hatch* and *Marston*, for the defendants.

BELL, J. The first replication is objected to, because, as it denies none of the facts alleged in the plea, it admits them, and offers an issue to the jury upon the legal effect of them. The sufficiency of the plea is a matter of law, to be determined by the court upon a demurrer. A replication which refers a mere question of law to the decision of the jury, is not to be sustained. Gould's Pl. 358, 406; Arch. Civ. Pl. 202, 271; Com. Dig., Pleader, R, 10; *Hale* v. *Dennie*, 4 Pick. 503.

This replication is insufficient, if regarded as a denial of all the facts alleged in the plea. The replication must deny a single fact alleged in the plea alone, except in cases where two or more facts constitute a single point only, which would not be effectually answered by a denial of one of them. *Tibbetts* v. *Tilton*, 4 Foster (24 N. H.) 120, and cases there cited. The plea contains several allegations, the successful denial of which would defeat the plea: As, the replication might have denied the agreement of August 14, as stated; or, that the deed was delivered to Nott to be delivered to Watriss in execution of that agreement; or, that the deed was delivered upon any other agreement. These various matters cannot, consistently with the rules of pleading, be denied in mass. 1 Ch. Pl. 577; Gould's Pl. 406, 420; Arch. Civ. Pl. 209; Com. Dig., Pleader, R, 4; *White* v. *Stubbs*, 2 Saund. 296.

The second replication denies one of the facts alleged in the plea alone: namely, that the deed was delivered to Nott, to be delivered to Watriss, upon the agreement between Nott and Watriss, of August 14, stated in the plea, or in execution of it.

This fact is essential to the charge of fraud. If it was not so, the charge fails. It is immaterial upon what agreement the deed was placed in Nott's hands, if not on this. It is enough for the plaintiff to deny a material part of the defence, without stating his own account of the transaction. *Bradner* v. *Dimick*, 20 Johns. 404.

It is objected to the fourth and fifth replications, that they are

inconsistent with each other, and the other replications, and repugnant to them. This is not material. The statute (1847, ch. 503 ; Comp. Stat. 483, sec. 4,) authorizes the plaintiff " to file as many separate replications as the nature of the case may require." Such an objection was formerly allowed to several pleas ; Com. Dig., Pleader, E, 2 ; but it is now held that each plea is to be considered as independent of the others, and to operate as if pleaded alone. Mere inconsistency is therefore no objection to their being pleaded together. Gould's Pl. 434 ; 1 Ch. Pl. 540, 542 ; Arch. Civ. Pl., 253 ; Saund. Pl. & Ev. 724.

The facts asserted in these pleas are not material. That the agreement of August 14 was made, is admitted by the allegation that it was abandoned or changed. Though the defendants knew that it had been afterwards abandoned or changed, it was competent for them to place their obligation in the hands of Nott, to be delivered upon that agreement, if Watriss would take it. And if Nott and Watriss, knowing this, fraudulently and covinously concluded a different bargain, less beneficial to the defendants, without consulting them, and delivered the obligation upon it, the defendants would not be bound. It would make no difference, that, when they authorized their obligation to be used to carry into effect one set of stipulations, which they approved, they were aware that the immediate parties had agreed to abandon or change them, and adopt others, to which they did not assent. To make the replication effectual, it was necessary to add a traverse of the fact that the deed was placed in Nott's hands to carry out that contract. Such an addition would make these replications substantially the same as the second.

The sixth, seventh and eighth replications are open to the same objection. They deny nothing alleged in the plea, and, of course, admit the fraud charged. *Cheever* v. *Mirick*, 2 N. H. 376. This defence can be met and obviated in one way only. The plaintiff may show that the invalid instrument was afterwards ratified by the defendants. The facts stated in each of these replications have a tendency to show a ratification. Unless they constitute a ratification, they are merely immaterial ;

the fraud alleged is none the less a fraud on this account; and the deed invalidated by it is none the less invalid. Neither of them in terms sets up a ratification. That is done distinctly, in another replication, upon which issue is joined. The facts stated in these replications, if offered as evidence of a ratification upon the issue joined on that fact, would be proper to be weighed and considered by the jury, in connection with any other evidence bearing upon that point. But they cannot be considered as even argumentatively equivalent to a plea of ratification, unless they necessarily and of themselves amount to a ratification. *Corwin* v. *Corwin*, 9 Barb. 219. On examination they will be found to have no such effect. They may or they may not amount to a ratification, according to various circumstances, which are not alluded to in the replications. *Shumway* v. *Stillman*, 4 Cowen 292.

In all of the replications it is alleged that the defendants asked and received of Nott a release of his interest in the land mortgaged. In two of them, that they asked and received of the railroad company an indemnity against any loss arising from this deed. Neither of these things would be of itself a ratification. If so intended, or if so done that an intention to ratify the deed could be fairly inferred, it would be a ratification. But as to this point nothing appears, and nothing is to be inferred. It is always presumed that a pleader states his case in his own favor as strongly as it will bear. Gould's Pl. III., 169; 1 Ch. Pl. 241, 521; Arch. Pl. 235; Broom's Maxims 461. If these instruments were drawn, as they well might have been, so as to negative all idea of a ratification, they could not amount to a ratification.

In the two last replications it is alleged that the defendants, on being informed of all that had been done by Nott, did not object to the delivery of the deed by Nott to Watriss, upon the new contract. It is not said they assented or agreed to this delivery. Such an assent or agreement would be a ratification. They did not object. They did nothing. Silence, when a man ought to speak; doing nothing, when he could and ought to act,

may well justify the inference of consent. But such inference is not necessarily to be drawn from the mere fact of silence or inaction. These are to be considered, with all their accompanying circumstances. The defendants were informed of the facts only after the fraud had been consummated; and as they were not bound, they might well wait and do nothing till they were called upon to pay. It is by no means clear what they should have done besides, or that they were bound, or had opportunity to do any thing. They had nothing in their hands which they were bound to restore; they had no control of the funds received by the corporation, or of the land conveyed to Nott.

In the same replications it is said the defendants, on being informed of what had been done by Nott, did not repudiate or disclaim the acts and doings of Nott, as the agent of the company, or the terms or conditions on which he purchased the land or borrowed the money; nor object to his retaining the money and expending it for the use of the corporation.

These facts are not material. Nott is alleged and admitted to be the agent of the corporation, with power to bind them, as he assumed to do. The corporation was bound, and the defendants, as stockholders, or directors, or as individuals, had no right or power to disclaim or repudiate Nott's acts in behalf of the corporation. No inference could be fairly drawn, much less would any inference necessarily result, from their silence or inaction, where they had no right to complain or to interfere.

The other facts alleged in these replications, showing the relation of Nott as agent, and of the defendant as stockholders and officers, to the railroad corporation, have no direct tendency to show a ratification of Nott's acts in the delivery of this deed, though they may render that conclusion, from the other facts, more probable. The facts alleged in these replications do not of themselves constitute an answer to the plea of fraud, and they are consequently defective and insufficient.

The facts essential to a defence must in general be expressly and substantially alleged. The statement of mere evidence

tending to prove a material fact is not sufficient. Such a mode of pleading, if admitted, would refer the matter of fact in question to the court instead of the jury. Thus, if in trover the plaintiff allege a demand and refusal, but omits to aver a conversion, the declaration is ill, the demand and refusal being only evidence of a conversion, which is the gist of the action. Gould's Pl., III., 166 ; *Tirer* v. *Littleton,* 10 Co. 56 ; Arch. Civ. Pl. 238 ; *Ralston* v. *Strong,* 1 Chip. 293 ; *Palister* v. *Little,* 6 Greenl. 350 ; *Lyman* v. *Lull,* 4 N. H. 495 ; *Bullock* v. *Perry,* 2 S. & P. 319 ; *Hughes* v. *Wheeler,* 8 Cowen 81 ; *Calvin* v. *Burnett,* 17 Wend. 564 ; *Fidler* v. *Delavan,* 20 Wend. 60 ; *Church* v. *Gilman,* 15 Wend. 656 ; *Myers* v. *Bell,* 5 Blackf. 249 ; *Hoard* v. *Garner,* 1 Saund. 614 ; *Boyce* v. *Brown,* 7 Barb. 80 ; *Russell* v. *Clapp,* 7 Barb. 482 ; *Knowles* v. *Gee,* 8 Barb. 300 ; *Stone* v. *DePuga,* 4 Saund. 684 ; *Corwin* v. *Corwin,* 9 Barb. 219.